## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH GROOMS,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-4244** |
| **TYRONE WIGGINS,** *et al.* | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

**RUFE, J.**                                                                                    **MARCH 4, 2014**

Deborah Grooms has sued Tyrone Wiggins; the City of Philadelphia; former Police Commissioners Richard Neal, John Timoney, and Sylvester Johnson; and the Philadelphia Department of Parks and Recreation, for violations of her constitutional rights actionable under 42 U.S.C. § 1983. Before the Court are motions to dismiss filed on behalf of the City, Neal and Johnson. For the reasons below, the motions will be granted in part without prejudice and denied in part as moot.

### I.      Facts[1]

Tyrone Wiggins was a Philadelphia Police Officer. On March 25, 2011, he was sentenced to seventeen and one half to thirty five years' incarceration following his conviction for criminal charges stemming from his eight-year long campaign of horrifying sexual abuse of Plaintiff Deborah Grooms. Although Wiggins is a defendant to this lawsuit, he is not a party to the present motions.

When Grooms was ten years old, she was enrolled in a karate class taught by Wiggins that took place at the Olney Recreation Center, a facility operated by the Parks Department. A fair inference from the Complaint is that the Police Department could dictate whether or not

---

[1] The facts are taken from the Complaint and accepted as true.

Wiggins taught at Olney. Wiggins ingratiated himself with Grooms's family, and after he had known Grooms for about two years he began to abuse her. Over the next eight years he raped her repeatedly.

Wiggins used his physical strength, proximity to Grooms's family, and his status as a police officer to intimidate Grooms. He threatened her with incarceration if she ever told anyone about his actions. He also committed some of his crimes against Grooms while he was on duty as a police officer: he would drop Grooms's brother off at the police station's weight room so that the brother could exercise while Wiggins drove to Fairmount Park to abuse Grooms, and when a radio dispatcher called to ask where he was, Wiggins would lie. On more than one occasion, Wiggins was at Grooms's apartment, and he was so loud that neighbors reported the disturbances. Wiggins frustrated any possibility that the reports would free Grooms from Wiggins's terrorizing behavior by flashing his badge and telling the officers who responded to the scene that he was a police officer and that "everything was okay."[2] No one at the police department ever investigated these disturbances further.

Finally in 2006, Grooms mustered the courage to call the police herself and report Wiggins's history with her. Wiggins was suspended pursuant to an order of Johnson. However he was still permitted to teach karate at Olney Recreational Center during the investigation, and before it concluded, Wiggins was returned to active duty. Later, he was permitted to resign, which may have enabled him to retain his pension, and after his arrest the Police Department continued to allow him to teach karate at Olney.

---

[2] Compl., Doc. No. 1, at ¶ 42.

## II.        Standard of Review

As the Supreme Court has held, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation,"[4] and therefore a Plaintiff's "complaint must contain enough factual allegations," accepted as true, to permit a court to infer that "discovery would provide evidence of each element of the claim."[5]

## III.       Discussion

### A.        § 1983 Claims

The moving defendants do not dispute that Grooms has stated an injury cognizable under § 1983, namely a violation of her substantive due process right to bodily integrity, nor do they argue that her action is time-barred.[6] They do, however, argue that Grooms's complaint fails to state a sufficient factual basis to impose liability on the moving defendants, two police commissioners and the City of Philadelphia.

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

[4] *Id.*

[5] *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011).

[6] In any event, the action is timely. "In § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are . . .  binding rules of law." *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 484 (1980). Ordinarily, § 1983 claims against persons acting under color of Pennsylvania law are subject to a two year statute of limitations, *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985), but Grooms's claims were tolled until twelve years after she turned eighteen. 42 Pa. Cons. Stat. Ann. § 5533(b)(2).

Grooms has advanced two theories of liability with respect to the moving defendants. First she has alleged that they should be held liable for failing to train police officers; second, that the City caused her constitutional violations pursuant to official policies or customs.

In order to establish liability for failure to train, Grooms must plead (1) that the individual defendants were "deliberately indifferent to the need to train" police officers about sexual abuse and "(2) that the lack of training actually caused the [constitutional] violation in this case."[7] To establish deliberate indifference, Grooms must allege "that a municipal actor disregarded a known or obvious consequence of his action."[8] To allege that "action pursuant to official municipal policy caused [her] injury," she may point to "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[9]

Grooms argues that she has pleaded sufficient facts by extensively quoting from her complaint several recitations of elements of cognizable § 1983 actions. For example, in the complaint she stated that she brought "this action against the City of Philadelphia . . . for failing to properly screen, train, control, monitor, and/or supervise Defendant Wiggins' activities and conduct . . . ."[10] Similarly, she states, without alleging any supporting facts, that the individual "[d]efendants knew or should have known that Wiggins was abusing his authority as a Police Officer to sexually exploit Plaintiff . . . ."[11] These and the other quotations from the complaint put the Defendants on fair notice of the legal theories of the claims they are to defend against,

---

[7] *Connick v. Thompson*, 131 S. Ct. 1350, 1358 (2011).

[8] *Id.* at 1360.

[9] *Id.* at 1359.

[10] Doc. No 3 at 11–12.

[11] Doc. No. 11-1 at 17.

and they may have been enough to state a claim for relief under *Conley v. Gibson*.[12] However, *Iqbal* makes it clear that an allegation of harm coupled with the recitation of a legal theory is not sufficient to state a claim to relief. Rather, Grooms must allege in her complaint sufficient facts to make it plausible that after discovery she will have evidence of "each element" of her claims.[13]

With respect to the failure-to-train accusation, the complaint does not give sufficient indication of the factual basis of the two essential elements, namely deliberate indifference and causation, to state a plausible claim for relief. Beyond alleging that Neal and Johnson were the Commissioners of Police at the times when Grooms's constitutional rights were violated, she alleges no facts to support the inference that at the time she was abused there was any known or obvious condition that required training that either individual defendant failed to address. Grooms argues in both her complaint and in her opposition to the motions to dismiss that the individual defendants had a continuing duty to review police officers' conduct and credentials, but this does not rise to the level of "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights."[14]

The closest Grooms comes to alleging a known or obvious condition to which Defendants were deliberately indifferent is when she describes what happened after she reported Wiggins's abuse to the police in 2006,[15] specifically that Wiggins continued to teach karate at Olney Recreational Center during the internal affairs investigation into Grooms's allegations and

---

[12] The cases that Grooms relies on in her opposition to the motions to dismiss were decided when the prevailing approach to 12(b)(6) motions was to deny the motion "unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

[13] *Brewer*, 446 F. App'x at 510.

[14] *Connick*, 131 S. Ct. at 1360.

[15] Compl. at ¶¶ 48–54.

that he returned to active duty before the investigation ended. Additionally, she alleged that he was not fired but permitted to resign and that the Police Department continued to allow him to teach karate at Olney even after his arrest.

Assuming without deciding that these facts could support an inference that Johnson and the City were deliberately indifferent to the constitutional rights of the people who might come into contact with Wiggins (particularly young karate students), there is no reason to conclude that this deliberate indifference caused Grooms' constitutional violations between 1997 and 2005. Indeed, there is no evidence that the conditions to which anyone could be indifferent were known or obvious or even existed during those years.

Furthermore, Grooms pleads no facts which could support the inference that Neal (who was Commissioner until 2002) was on actual or constructive notice of Wiggins' behavior at any point. It is not enough that Wiggins abused her. The abuse or the conditions that permitted the abuse to continue must have been known or obvious to the moving defendant and he must have chosen to ignore them in order to be held liable on a failure to train theory.[16]

Grooms further fails to plead facts that could subject the City to liability under a theory that an official policy or custom caused her injuries. Instead, she relies on generalized allegations such as the following: "The deprivation of Plaintiff's substantive due process rights to bodily integrity resulted from the constitutionally violative policies, practices, procedures and/or customs of the City of Philadelphia, including but not limited to . . . the development and implementation of reckless policies, practices and/or procedures governing the conduct of police officers that inadequately protected citizens, such as Plaintiff Deborah Grooms, from sexual assaults and violence perpetrated by rogue and out-of-control police officers who use, misuse,

---

[16] *Connick*, 131 S. Ct. at 1358.

and abuse their authority as Police Officers."[17] Despite the prolixity of her complaint, these allegations contain no facts other than the recitation that the Defendants harmed Grooms. She never alleges with any specificity what the policy or custom was or any facts beyond her injuries to suggest that it existed. Therefore, Grooms fails to allege how a factfinder could infer that a policy, rather than a rogue officer, caused her injuries.

The closest Grooms comes to alleging evidence of a policy that injured her is that while the abuse was ongoing, her neighbors occasionally called the police; when they did so, Wiggins would show his badge to the first responders who would then not conduct any investigation into the call that brought them to the scene. However no allegation links this occurrence with any policy or custom propounded by the individual or municipal moving defendants. Without any allegation that there was a policy or custom that shielded police officers from investigation, the court cannot infer that such a policy or custom caused Grooms's injuries. It is conceivable that the responders were acting pursuant to some custom or policy, and therefore leave to amend is appropriate, but Grooms must plead facts sufficient to describe what the policy or custom was and how the policy or custom injured her beyond her *ipse dixit*.

In short, Grooms unquestionably alleges sufficiently that she was injured, but beyond conclusory statements, she never alleges that police commissioners or other municipal officials knew or had reason to know of her injuries or that they enforced a specific custom or policy pursuant to which she was injured. To subject the moving defendants to liability on the basis of the complaint would be to impose *respondeat superior* liability in this § 1983 action, which the Supreme Court prohibits.

---

[17] Doc. No. 3 at 18.

  B.  *Common Law Claims*

  Defendants also move to dismiss Grooms's intentional tort claims as against them on the grounds that they are immune from these claims. Grooms correctly points out that she did not plead these claims against the moving defendants, and therefore the motion will be denied as moot with respect to the tort claims, as Grooms argues it should be.

## III. Conclusion

  There can be no doubt that Grooms has alleged grievous, abominable injuries. However, she has failed to allege facts that could support a legal theory that would impose liability on the moving defendants. Because Defendants have failed to demonstrate that amendment of the complaint would be futile, and for the reasons stated above, the motion to dismiss will be granted in part without prejudice and denied as moot in part.[18] An appropriate Order follows.

---

[18] Grooms may amend her Complaint within twenty-one days of the entry of the accompanying Order without further leave of court. If, as this case proceeds against any defendant, Grooms learns of facts that could support a theory of liability with respect to the moving defendants here, the Court is of course mindful that on motion it "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P./15(a)(2).